IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM F. DOSHIER and DOTSTRATEGY, CO.                             PLAINTIFFS

vs.                            Case No. 4:18-CV-00628-KGB

FACEBOOK, INC.                                                       DEFENDANT

**FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Defendant Facebook Inc. ("Facebook") opposes Plaintiffs William F. Doshier and dotStrategy, Co.'s (collectively, "Plaintiffs") motion for default judgment. Plaintiffs' motion fails because they did not properly serve Facebook with process on July 16, 2018 and to date still have not done so. Because proper service is mandatory, the Court lacks jurisdiction over Facebook and cannot enter default judgment against it.

Facebook learned of this case through a third-party docket monitoring service shortly after it was filed in July 2018. Facebook retained counsel, who regularly and vigilantly monitored the Arkansas Circuit Court docket for proof of service and checked for receipt of process at Facebook. Counsel first learned that Facebook had purportedly been served on August 29, 2018, during its regular monitoring of the Arkansas Circuit Court docket, which reflected that two days prior, Plaintiffs filed both a belated proof of service and a motion for default judgment against Facebook.

After learning of the alleged proof of service and the motion for default judgment, Facebook promptly took action to determine what happened. Although Plaintiffs deposited their Restricted Delivery mail service packet with the U.S. Postal Service ("USPS") to deliver it to

1

Facebook, proper service did not occur. The USPS apparently released the packet to a contractor for Facebook who picks up Facebook's mail at a local USPS location. USPS should not have released the packet to Mr. Symons, because he is not "authorized by appointment or by law to receive service of summons," and is not authorized in writing, "in accordance with U.S. Postal Service regulations," to accept Restricted Delivery mail on behalf of Facebook's Chief Executive Officer. Ark. R. Civ. P. 4(d)(5), 4(d)(8)(A)(i); *see also id.* 4(e)(3) (incorporating subdivision (d)(8) as the proper means of service by mail outside the state).

Moreover, the contractor did not sign the return receipt "green card" that is mailed back to the sender to show proof of delivery. No one else did either. The unsigned green card remains affixed to the service packet USPS released to the contractor. When Plaintiffs did not receive the completed green card in the mail, Plaintiffs asked USPS for evidence of delivery, and Plaintiffs were sent a letter from USPS purporting to contain the signature of a purported agent of Facebook showing proof of delivery. But the incomplete green card remains attached to the service packet provided by USPS and was not signed or returned by the contractor. It appears that after Plaintiffs asked USPS for proof of delivery, the USPS improperly created it, misspelling the contractor's name.

While Plaintiffs are entitled to attempt service through U.S. mail under Arkansas Rule 4, errors by the USPS like the one described above explain why "lawyers have questioned the efficacy of service by mail . . . in part because the postal service does not always follow its own rules regarding restricted delivery mail." Ark. R. Civ. P. 4, Reporter's Notes (2002 amend.). The failure of proper service by restricted delivery U.S. mail, as happened here, explains why service of process on a registered agent is also permitted under Arkansas Rule 4 and is the standard way companies like Facebook are served.

In short, proper service in strict compliance with Arkansas Rule 4—by law a mandatory prerequisite to the relief sought by Plaintiffs—did not happen here and the Court therefore is without power to enter default judgment against Facebook.

Even had service been proper (which it was not), Plaintiffs' motion should be denied in light of the factors that must be considered in assessing a motion for default judgment, all of which weigh strongly against granting the motion. Plaintiffs filed this case in Arkansas state court, despite a forum selection clause in the applicable contracts (cited by Plaintiffs in their Complaint) requiring any suit against Facebook to be brought in a California court. Likewise, Plaintiffs attempt to bring claims against Facebook only under Arkansas law, despite that, pursuant to the same contracts, any claims by Plaintiffs are governed exclusively by California law. And Facebook has strong defenses on the merits. Facebook stood ready to remove and move to dismiss or transfer within its time to do so after it was properly served. The Court should deny Plaintiffs' motion and permit Facebook the opportunity to defend itself.

**I.      Factual Background**

On July 10, 2018, Plaintiffs filed a nationwide putative class action lawsuit in Arkansas Circuit Court, Faulkner County, generally alleging that Facebook improperly charged them and tens of millions of Facebook "self-serve" advertisers for invalid clicks—which the Complaint defines as "clicks generated through fake [Facebook] accounts"—on advertisements purchased and placed on the Facebook platform. *See* Compl. (Dkt. 2) ¶¶ 27, 256.

Plaintiffs allege that when they purchased ads to place on Facebook, they "contract[ed] with Facebook" and agreed to abide by Facebook's Terms of Service and the Self-Serve Ad Terms, Compl. ¶ 29, each of which are quoted in part and incorporated by reference in the Complaint. *Id.* ¶ 14 ("Facebook's Terms of Service can be found at the following link:

3

https://www.facebook.com/legal/terms"), ¶ 31 ("Facebook's Self-Serve Ad Terms can be found at the following link: https://www.facebook.com/legal/self_service_ads_terms"). Facebook's Terms of Service contain forum selection and choice of law clauses specifying California fora and law as applying to all claims arising out of or relating to the Terms of Service or any Facebook Products.[1] *See* Terms of Service ¶ 4.4.[2]

Facebook learned of the Complaint through a third-party docket monitoring service shortly after the Complaint was filed in July 2018, and retained counsel to represent it in this action. Ex. A to Defs.' Opp., Decl. of Marshall Ney ¶ 4.[3] In addition to checking for receipt of process at Facebook, counsel regularly and vigilantly monitored the docket in Arkansas Circuit Court to determine whether Facebook had been served. *Id.* ¶ 5; *see* Ark. R. Civ. P. 4(g) (requiring filing of proof of service within defendant's time to respond to the complaint).

On August 27, 2018, Plaintiffs filed an affidavit of service of the Complaint and a motion for default judgment in Arkansas Circuit Court, both claiming that Facebook had been properly served by U.S. mail on July 16, 2018. *See* Pls.' Aff. of Service; Pls.' Mot. for Default J. (Dkt. 3) ("Pls.' Mot."). Facebook and its counsel learned of those filings on August 29, 2018, through their ongoing monitoring of the docket. Ex. A ¶ 8. Counsel promptly entered his appearance in Arkansas Circuit Court, in order to remove to this Court and to oppose Plaintiffs' motion. Ex. A ¶ 10.

Plaintiffs submit an affidavit from Edwina Keith, an assistant to Plaintiffs' counsel, who

---

[1] *See* Terms of Service (defining "Facebook Products" as "the products, features, apps, services, technologies, and software we offer").
[2] Paragraph 4.4 provides: "For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ('claim'), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions."
[3] Facebook's knowledge of this proceeding "does not validate defective process." *Wilburn v. Keenan Cos.*, 298 Ark. 461, 463, 768 S.W.2d 531, 532 (Ark. 1989).

states that she mailed the Summons and Complaint to Facebook's CEO via certified mail, restricted delivery,[4] with a return receipt requested.  Ex. G to Pls.' Mot. ("Keith Aff.") ¶¶ 1–3, 7.  When she did not receive the return receipt "green card" in the mail, Ms. Keith requested and obtained from the USPS a "proof of delivery letter via e-mail as a PDF attachment." *Id*. ¶ 12.  The USPS letter dated August 13, 2018 (the "August 13, 2018 letter") represents that the Summons and Complaint were "Delivered, To Agent" on July 16, 2018 at 8:23 a.m. and contains a purported signature of the recipient.  Ex. B to Pls.' Mot.; Pls.' Mot. ¶ 5.

Immediately upon learning of Plaintiffs' motion for default judgment and claim of service, Facebook promptly took action to determine whether Facebook had been served properly.  It had not.  No Facebook employee or agent—let alone one authorized to receive process as required by Arkansas rules—signed for the Summons and Complaint.  Ex. B to Defs.' Opp., Decl. of Juan Cortes ¶¶ 4–9.

Rather, the shipment at issue apparently was given by USPS to a Facebook contractor who collects Facebook's mail from a local USPS office near Facebook's headquarters.  Ex. B ¶¶ 5, 10.  (The actual USPS letter identified a name that does not correspond to anyone employed by Facebook or working as a Facebook contractor.  Ex. B ¶ 4.)  The contractor is not authorized to accept service of process on behalf of Facebook and is not authorized to accept restricted delivery mail as an agent of Facebook's CEO in accordance with USPS regulations. Ex. B ¶¶ 6–9.

The contractor also did not sign the "green card" return receipt affiliated with the packet.  Rather, USPS apparently provided the packet to him with the unsigned "green card" intact, along with other U.S. mail.  Ex. B ¶¶ 10–11, Ex. 1 thereto.  It appears that USPS never collected a

---

[4] "[M]ail marked 'Restricted Delivery' is delivered only to the addressee or to the person authorized in writing as the addressee's agent," pursuant to the USPS's specific requirements.  *See* Domestic Mail Manual § 508.1.1.8, *available at* https://pe.usps.com/text/dmm300/508.htm#ep1133009

signature on the "green card" from the contractor, as reflected in the August 13, 2018 letter submitted by Plaintiffs.

Within a few days of learning of the motion for default judgment through its monitoring of the state court docket, Facebook timely removed to this Court under the Class Action Fairness Act. *See generally* Notice of Removal (Dkt. 1).

**II.     Legal Standard**

"[D]efault judgments are not favored by the law and should be a rare judicial act . . . . there is a judicial preference for adjudication on the merits." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (citation and quotation marks omitted)); *Robinson v. Wright*, No. 5:15-CV-00071 BSM, 2017 WL 6627518, at *1 (E.D. Ark. Dec. 28, 2017) (noting "default judgments are disfavored" and "determination on the merits is preferred"); *Moore v. Taylor Sales, Inc.*, 59 Ark. App. 30, 34, 953 S.W.2d 889, 891 (Ark. Ct. App. 1997) (citing *B & F Eng'g, Inc. v. Cotroneo*, 309 Ark. 175, 178, 809 S.W.2d 835, 837 (Ark. 1992) ("Default judgments are not favorites of the law and should be avoided when possible.")).

Arkansas' "service requirements" are "in derogation of common law rights" and "must be strictly construed and compliance with them must be exact." *Wilburn*, 298 Ark. at 463, 768 S.W.2d at 532 (citing *Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (Ark. 1978)). Furthermore, it is "long settled that service of valid process is necessary to give a court jurisdiction over a defendant." *Raymond v. Raymond*, 343 Ark. 480, 484, 36 S.W.3d 733, 735 (Ark. 2001); *see also Brinkley v. City of Helena-W. Helena, Ark.*, No. 2:11-cv-00207-SWW, 2012 WL 5207595, at *3 (E.D. Ark. Oct. 22, 2012) ("Proper service of process is essential because," without it, "'a federal court lacks jurisdiction over the defendant.'" (quoting *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir.1993))). Plaintiffs bear the

"extremely heavy burden" of demonstrating that they have complied with Arkansas' rules on service of process. *Dobbs v. Discover Bank*, 2012 Ark. App. 678, 8, 425 S.W.3d 50, 55 (Ark. Ct. App. 2012); *see also Brinkley*, 2012 WL 5207595, at *3 (E.D. Ark. Oct. 22, 2012) (holding that plaintiffs bear the burden "to prove proper service once it is contested").

Even if a court has power to enter default judgment assuming proper service, such entry is in the "sound discretion of the trial court." *Belcourt Pub. Sch. Dist.*, 786 F.3d at 661 (quotation marks omitted). In deciding whether to grant a motion, the court considers the following factors:

> [T]he amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Id.* (quoting *Briarpatch Ltd. v. Geisler Roberdeau, Inc*., 513 F. Supp. 2d 1, 3 (S.D.N.Y. 2007)).[5]

The same factors would be considered if this motion were being heard in Arkansas Circuit Court, where entry of a default judgment is likewise discretionary, not mandatory. *See Wildlife Farms II, LLC v. Robinson*, 2011 Ark. App. 140, 8–9, 378 S.W.3d 824, 830 (Ark. Ct. App. 2011) (citing Ark. R. Civ. P. 55, Reporter's Note (1990 amend.)) ("[I]n deciding whether to enter a default judgment, the court should take into account the factors utilized by the federal courts, including: whether the default is largely technical and the defendant is now ready to defend; whether the plaintiff has been prejudiced by the defendant's delay in responding; and whether the court would later set aside the default judgment under Rule 55(c).").

---

[5] While the Federal Rules require entry of default pursuant to Federal Rule 55(a) prior to entry of default judgment, there is no analogous requirement under Arkansas Rule 55. *Compare* Fed. R. Civ. P. 55(a), *with* Ark. R. Civ. P. Ark. R. Civ. P. 55. Default judgment therefore cannot be entered by this Court without the clerk first entering default under Fed. R. Civ. P. 55(a). *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). Nevertheless, the motion should be denied on its merits as explained herein.

**III.   Argument**

    **A.   Plaintiffs Did Not Properly Serve Facebook So There Is No Basis For A Default Judgment.**

The Court should deny the motion for default judgment because Facebook has not been validly served—a mandatory prerequisite to a default judgment. First, Plaintiffs did not serve an agent of Facebook authorized to receive service of process. *See* Ark. R. Civ. P. 4(d)(5). Nor did they serve an agent authorized to receive restricted delivery mail on behalf of Facebook's CEO, to whom service was addressed. *See id.* 4(d)(8)(A)(i). And finally, service did not comply with California law. *See id.* 4(e)(2) (providing that out of state service may be made pursuant to local law where service is made).

        **1.   Plaintiffs Failed To Serve An Agent Authorized To Receive Service of Process.**

Plaintiffs' service is invalid because they did not serve an agent of Facebook authorized to receive service of process. Arkansas Rule 4(d)(5) requires that service of a corporation must (as applicable here) be made on "an officer . . . managing or general agent, or any agent authorized by appointment or by law to receive service of summons." Ark. R. Civ. P. 4(d)(5). Courts have found the requirements of Arkansas Rule 4(d)(5) applicable to service of a corporation by mail, and such service defective for failure to meet those requirements.

For example, in *Henry v. Gaines-Derden Enterprises, Inc.*, the Arkansas Supreme Court held that service of a corporation by mail was deficient where the materials were retrieved at the post office by an employee of the corporation who was not "'authorized by appointment or by law to receive service of summons'" and who also "had no express authority to receive restricted mail." 314 Ark. 542, 547, 863 S.W.2d 828, 831 (Ark. 1993) (quoting Ark. R. Civ. P. 4(d)(5)). Other cases likewise indicate that compliance with Rule 4(d)(5) is required when serving a

foreign corporation by mail. *See CMS Jonesboro Rehab., Inc. v. Lamb*, 306 Ark. 216, 220, 812 S.W.2d 472, 474–75 (Ark. 1991) (holding service was perfected when made by mail on an agent "authorized to receive restricted and unrestricted mail, **including process**" (emphasis added)); *Advance Fiberglass, LLC v. Rovnaghi*, 2011 Ark. 516, 3, 2011 WL 6091346, at *5 (Ark. 2011) (requiring service by mail on a limited liability company to comply with both Arkansas Rules 4(d)(5) and 4(d)(8)(A)(i)); *Diamond Bear Brewing Co. v. Stromberg Tanks Int'l, Inc.*, No. 4:10CV00080 JLH, 2010 WL 1417001, at *2 (E.D. Ark. Apr. 6, 2010) (same); *Smith v. Hughes Network Sys. LLC*, No. 4:06CV00654 JLH, 2007 WL 1219694, at *2 (E.D. Ark. Apr. 24, 2007) (same); Ark. R. Civ. P. 4(d)(8)(A)(i) (incorporating Arkansas Rule 4(d)(5) by reference).[6]

The Facebook contractor who received the service packet from USPS is not a "managing or general agent" of Facebook or an "agent authorized by appointment or by law to receive service of summons." Ex. B ¶¶ 6, 7. The USPS released the packet to him without having him sign the attached return receipt "green card," which remains attached and incomplete on the package released to him by USPS. Ex. B ¶ 10, Ex. 1 thereto. Further, the USPS appears to have created a substitute proof of delivery with a misspelling of his name. Pls.' Mot, Ex. B thereto.

Plaintiffs claim the purported agency of "Mr. Simons" to accept service of process on behalf of Facebook by reference to the August 13, 2018 USPS letter stating the packet was "Delivered, To Agent." *See* Pls.' Mot. ¶¶ 12–14. But USPS' unilateral assertion of agency is not proof of authorization to receive service of process on behalf of Facebook. The law is clear that Facebook must have specifically authorized any agent to accept service of process on its behalf. *See Emerson v. Bridgforth*, 271 Ark. 289, 293, 608 S.W.2d 47, 49 (Ark. Ct. App. 1980) ("[A] person who was an agent for a different purpose may not bind a defendant by receiving

---

[6] *See also Frazier v. Experian Info. Sols., Inc.,* No. 4:08CV00370 JLH, 2008 WL 4057987, at *1 (E.D. Ark. Aug. 26, 2008) (same); *Broadway v. adidas Am., Inc*., No. 3:07cv000149 SWW, 2008 WL 2705566, at *2 (E.D. Ark. July 10, 2008) (same).

9

process for him."). Because the contractor was not authorized to accept service of process for Facebook, service was deficient as a matter of black letter law. Ex. B ¶¶ 6–7.

### 2. Plaintiffs Failed To Comply With Service-By-Mail Requirements.

Plaintiffs separately fail to meet the requirements of service by mail under Arkansas Rule 4(d)(8)(A)(i), rendering service invalid.[7] That provision states that, when serving a corporation by mail, "[t]he addressee must be a natural person specified by name, and the agent of the addressee must be authorized in accordance with U.S. Postal Service regulations." *Id*. Plaintiffs' service fails to satisfy Rule 4(d)(8)(A)(i) because service was not made on a person "authorized in accordance with U.S. Postal Service regulations" to receive restricted delivery mail on behalf of Facebook or its CEO.

The contractor is not authorized to receive restricted delivery mail in accordance with USPS regulations, Ex. B ¶¶ 8–9, as required by the Arkansas rules. Arkansas Rule 4(d)(8)(A)(i) requires that any agent of the addressee who accepts restricted delivery mail be authorized to accept such mail "in accordance with U.S. Postal Service regulations." *See Green v. Yarbrough*, 299 Ark. 175, 177, 771 S.W.2d 760, 761 (Ark. 1989) (holding that "agent" in this subsection of the Rule "refers to an agent appointed pursuant to the applicable postal regulations"). Moreover, "the term 'restricted delivery' denotes a very specific delivery procedure within the postal service," and Rule 4(d)(8)(A)(i) "requires the use of that procedure if service is to be made by mail." *Wilburn*, 298 Ark. at 463, 768 S.W.2d at 532.

The U.S. Postal Service's Domestic Mail Manual provides that "mail marked 'Restricted Delivery' is delivered only to the addressee or to the person authorized **in writing** as the addressee's agent." Domestic Mail Manual § 508.1.1.8, *available at*

---

[7] Arkansas Rule 4(e)(3) provides that service may be made outside of Arkansas by mail "as provided in subdivision (d)(8) of this rule."

10

https://pe.usps.com/text/dmm300/508.htm#ep1133009 (emphasis added).  USPS provides a "Standing Delivery Order" form that can be used to authorize an agent to receive restricted delivery mail.[8]  Neither the contractor nor the alleged "Mr. Simons" has been "authorized in writing" as Facebook CEO's agent for purposes of accepting restricted delivery mail.  Ex. B ¶¶ 4, 9.  Facebook has never executed a USPS "Standing Delivery Order" form authorizing either such individual to accept restricted delivery mail on behalf of its CEO.  Ex. B ¶¶ 4, 8.  *See CMS Jonesboro Rehab.,* 306 Ark. at 218, 812 S.W.2d at 473 (determining that service was proper where a "Standing Delivery Order" form authorizing the served individual to receive restricted delivery mail was "on file with the U.S. Postal Service" at the time of service).

Plaintiffs, not Facebook, bear the burden of "proving proper service once it is contested." *Broadway*, 2008 WL 2705566, at *3 (requiring plaintiff to "establish the agency of the person or entity receiving process;" rejecting the argument that "defendants make no effort to state the person signing the green card was not a proper agent").  That the August 13, 2018 letter states that the service packet was delivered "To Agent," "Mr. Simons," does not establish agency to receive restricted delivery mail.  In *Wilburn*, the Arkansas Supreme Court overturned the entry of default judgment because, even though the proof of delivery bore the signature of the person who accepted delivery as "Agent," there was no evidence that the party being served specifically authorized that signatory in writing to "be his agent to receive mail."  298 Ark. at 463, 768 S.W.2d at 532.  The same result is required here.  The evidence shows no person authorized to accept restricted delivery mail signed the green card or for the service packet.

Similarly, in *Diamond Bear Brewing*, this Court denied a motion for default judgment (originally filed in state court before removal) where the evidence showed the defendant did not authorize Postal Annex (a company "where businesses and individuals are allowed to rent

---

[8] A blank copy of this form is available at https://about.usps.com/forms/ps3801.pdf.

11

mailboxes for receipt of mail") to "accept restricted delivery mail" on behalf of the defendant corporation; the court so held even though Postal Annex otherwise had authority to accept other mail for the defendant. 2010 WL 1417001, at *1, 3; *see also Cole v. First Nat'l Bank of Fort Smith*, 304 Ark. 26, 28–29, 800 S.W.2d 412, 414 (Ark. 1990) (reversing entry of default judgment where there was "no showing that the [defendant] appointed his step-daughter as his agent pursuant to postal regulations"); *Henry*, 314 Ark. at 547, 863 S.W.2d at 831 (holding that service on defendant's employee "who picked up and signed for the certified mail" was ineffective where employee "was not listed in any file at . . . the post office" as a person with "express authority to receive restricted mail"); *Green*, 299 Ark. at 176–77, 771 S.W.2d at 761. Likewise, because neither "Mr. Simons" nor the contractor is authorized, in writing in accordance with USPS regulations, to accept restricted delivery mail on behalf of Facebook's CEO, service was deficient.

Plaintiffs may argue that the service packet delivered was incorrectly through no fault of their own. But, that argument is unavailing because "compliance" with service requirements "must be exact." *Wilburn*, 298 Ark. at 463, 768 S.W.2d at 532. Moreover, Plaintiffs chose to attempt service on Facebook's CEO, on behalf of Facebook, by restricted delivery mail in accordance with Arkansas Rule 4(d)(8)(A)(i), even though they had other service by mail options—including by serving Facebook's registered agent without any requirement of restricted delivery. *Id.* ("[S]ervice on the registered agent of a corporation or other organization may be made by certified mail with a return receipt requested."); *see also* Ex. A ¶ 12, Ex. 1 thereto (listing Facebook's registered agent).[9]

---

[9] Arkansas Rule 4 was amended to permit service on a registered agent after "lawyers have questioned the efficacy of service by mail under paragraph (A) of subdivision (d)(8), in part because the postal service does not always follow its own rules regarding restricted delivery mail." Ark. R. Civ. P. 4, Reporter's Notes (2002 amend.); *see also* Ark. R. Civ. P. 4, Reporter's Notes (2004 amend.) (amending Rule 4(d)(8)(A)(i) "to establish less onerous

### 3.     Service Was Improper Under California Law.

Finally, Arkansas Rule of Civil Procedure 4(e)(2) permits service "[i]n any manner prescribed by the law of the place in which service is made in that place." Under California law, service of process on a corporation may be made on, as potentially applicable here, either the registered agent, the chief executive officer, or a person authorized by the corporation to receive service of process. Cal. Code Civ. P. § 416.10(a)–(d). Plaintiffs did not serve Facebook's designated registered agent or its CEO, nor, as explained above, an agent authorized to accept service of process for Facebook. Ex. B ¶¶ 3–9. The August 13, 2018 letter's assertion of "Mr. Simons'" agency is insufficient proof of agency under California law. *Dill v. Berquist Constr. Co.*, 29 Cal. Rptr. 2d 746, 24 Cal. App. 4th 1426, 1437 (Cal. Ct. App. 1994) (holding that signature on postal receipt was insufficient proof of agency because "an extrajudicial statement of a person that he or she is the agent of another is not admissible to prove the fact of agency unless the statement is either made in the presence of or communicated to the principal and the principal acquiesces in that statement").

Plaintiffs also did not comply with the service-by-mail requirements under California law. Plaintiffs did not include "two copies of the notice and acknowledgement form" required under subsection 415.30(b), nor did they include "a return envelope, postage prepaid, addressed to the sender." Cal. Code Civ. P. § 415.30; *see* Ex. G to Pls.' Mot.

### B.     Because The Record Lacks A Return Receipt Signed by Any Agent, Default Judgment Should Be Denied.

The motion also should be denied because no Facebook employee or agent signed the "green card" USPS return receipt. Arkansas Rule 4(d)(8)(A)(ii) provides that service-by-mail

---

requirements when service is made on the registered agent of a corporation or other organization. In that situation . . . service may be made by certified mail, return receipt requested. Because delivery need not be restricted, there is no requirement that the addressee be a natural person or that the agent of the addressee be authorized in accordance with postal service regulations.").

13

"shall not be the basis for the entry of a default or judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee." The unsigned "green card" return receipt is intact on the envelope that Facebook located. Ex. B ¶ 10, Ex. 1 thereto. The August 13, 2018 letter purporting to have a signature of a Facebook representative is a letter, not a "return receipt." But, most importantly, the signature on that letter of "Lucus Simons" is **not** a signature of an agent authorized to receive restricted delivery mail. Ex. B ¶¶ 4, 8. It appears that the USPS created this proof of service after tendering the packet to the contractor without requiring him to sign the "green card," which is an insufficient basis to support default judgment.

### C.  Even Had Service Been Valid, The Court Should Deny The Requested Default Judgment.

Even assuming Plaintiffs had validly served Facebook (which they have not), default judgment would be wholly unwarranted. The relevant factors weigh strongly in favor of denying the motion, including that Plaintiffs failed to timely file proof of service.

#### 1.  Plaintiffs Failed To Timely File Proof of Service.

Arkansas Rule of Civil Procedure 4(g) requires Plaintiffs to file proof of service "within the time during which the person served must respond to the summons." Plaintiffs did not comply with this requirement. Assuming service had been validly made on July 16, 2018, Plaintiffs were required to file proof of service by August 15, 2018. *See* Ark. R. Civ. P. 12(a)(1). Instead, they filed proof of service on August 27, 2018.

Plaintiffs had notice as early as July 20, 2018 that the purported service was delivered, but waited over a month to file proof of service. *See* Ex. D to Pls.' Mot. (USPS webpage printout dated July 20, 2018, showing July 16, 2018 delivery). Plaintiffs also had proof of what they allege to be valid service—the August 13, 2018 letter—within the time period to file proof

of service, but did not file it. *See* Ex. B to Pls.' Mot. Plaintiffs' failure to timely file proof of service strongly weighs in favor of denying the motion. *See Chaparro v. IBP, Inc.*, No. CIV. A. 93-2200-GTV, 1993 WL 500877, at *1 (D. Kan. Dec. 1, 1993) (denying a request for entry of default judgment in part because the plaintiff failed to file proof of service before the defendant's response to the complaint was due).

### 2. Other Factors Strongly Weigh In Favor of Denying The Motion.

*Belcourt* factors—the amount of money involved, existence of prejudice, the technical nature of the alleged default and whether it was clearly established, and how harsh an effect the default judgment would have on Facebook—strongly counsel against Plaintiffs' requested relief. *Belcourt Pub. Sch. Dist.*, 786 F.3d at 661.

First, Plaintiffs' motion seeks certification of a nationwide putative class that allegedly contains at least tens of millions of people. Compl. ¶ 291. Plaintiffs are likely to claim (wrongly) damages in the hundreds of millions of dollars, if Plaintiff Doshier's unfounded allegations of his own damages are any indication. *See* Notice of Removal ¶¶ 18–19. Default judgment is unwarranted given the size and scope of this matter. *See Meredith v. Baldwin Piano, Inc.*, No. 3:08CV00046 SWW, 2009 WL 252291, at *2 (E.D. Ark. Jan. 30, 2009) (denying motion for default judgment where "the amount of damages requested in plaintiff's complaint is substantial, and it is likely that the Court would have to conduct a hearing under Fed. R. Civ. P. 55(b)(2) to ascertain the amount of damages, if any, to which she would be entitled"); *In re Howell Enters., Inc.*, 99 B.R. 413, 415 (Bankr. E.D. Ark. 1989) (same).[10]

Second, Plaintiffs have identified no prejudice, and there is none, from the very short alleged delay. *See McBride v. GoDaddy.com, Inc.*, No. 4:07-CV-4040, 2007 WL 4231092, at *1

---

[10] A hearing under Federal Rule 55(b)(2) would also be required in this case to "determine the amount of damages," and Plaintiffs do not contend otherwise in their motion. *See* Pls.' Mot. ¶ 39 (requested order).

15

(W.D. Ark. Nov. 28, 2007) (holding that plaintiff "must make a concrete showing of prejudice, such as loss of evidence, increased difficulties in discovery or great opportunities for fraud and collusion"); *Meredith*, 2009 WL 252291, at *2 (finding that "the passage of time" (there, several months) did not constitute substantial prejudice).

Third, a genuine dispute as to whether service was proper weighs against default. *See Lee v. Bhd. of Maint. of Way Empls.-Burlington N. Sys. Fed'n*, 139 F.R.D. 376, 381 (D. Minn. 1991) (denying default judgment where proper service was contested and because "any doubts as to whether a party is in default should be decided in favor of the defaulting party"). Moreover, even under Plaintiff's theory of alleged default, such default would be "largely technical." *See Mgmt. Registry, Inc. v. Batinich*, No. 18-1147 (JRT/TNL), 2018 WL 3621036, at *3 (D. Minn. July 30, 2018) (holding default was "largely technical" where defendant "missed the deadline to file his Answer"); *BMG Music v. Wiles*, No. 1:08CV00015BSM, 2008 WL 2783475, at *1 (E.D. Ark. July 16, 2008) ("[G]ranting a default judgment for a marginal failure to comply with time requirements is not appropriate." (quotation marks omitted)).

Fourth, default judgment should not be granted because of the unduly harsh effect it would have on Facebook, whose "substantive defense of this action would be over." *Mgmt. Registry*, 2018 WL 3621036, at *4. Such harsh effect is particularly acute here because Facebook has meritorious defenses. *See Meredith*, 2009 WL252291, at *2 (denying motion for default judgment where several meritorious defenses alleged). Pursuant to the very contracts cited by Plaintiffs in their Complaint, this case should have been brought in a California court under California law. All claims arising under Arkansas law are therefore subject to dismissal. Moreover, Plaintiffs' claims, even if pled under California law, would fail on the merits.

Facebook is fully prepared to defend this case on the merits, and will mount such

16

defenses within the time it is required to do so following proper service. *See* Fed. R. Civ. P. 81(c)(2); *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828–30 (8th Cir. 2003) (holding that a defendant's time to respond to complaint removed to federal court pursuant to Fed. R. Civ. P. 81(c)(2) does not begin to run until proper service).[11]

## IV. Conclusion

For the foregoing reasons, Facebook requests that the Court determine that service was invalid and deny Plaintiffs' motion for default judgment.

Dated: September 10, 2018                    Respectfully submitted,


                                             Karen L. Dunn (pro hac vice filed)
                                             Martha L. Goodman (pro hac vice filed)
                                             BOIES SCHILLER FLEXNER LLP
                                             1401 New York Avenue, N.W.
                                             Washington, DC 20005
                                             Tel: (202) 237-2727
                                             Fax: (202) 237-6131
                                             kdunn@bsfllp.com
                                             mgoodman@bsfllp.com


                                             Kathleen R. Hartnett (pro hac vice filed)
                                             BOIES SCHILLER FLEXNER LLP
                                             435 Tasso Street, Suite 205
                                             Palo Alto, CA 94301
                                             Tel: (650) 445-6400
                                             Fax: (650) 329-8507
                                             khartnett@bsfllp.com

---

[11] If the Court determines that service was proper but denies Plaintiffs' motion, Facebook asks that the Court afford it twenty-one days from the date of such order to file a responsive pleading under Federal Rule 12. *See* Fed. R. Civ. P. 6(b)(1)(A); *Carter v. Muldoon*, No. 8:17CV319, 2018 WL 1427101, at *3 (D. Neb. Mar. 21, 2018) (denying motion for default judgment, granting motion to set aside default, and extending time to file responsive pleading *sua sponte*); *Spruk v. Miss. Lime Co.*, No. 4:17-CV-1703 CAS, 2017 WL 3705234, at *1 (E.D. Mo. Aug. 28, 2017) (granting joint motion to set aside default and for leave to file a responsive pleading out of time). If necessary, Facebook would also move for an extension of time requesting twenty-one days from such an order to do so. *See* Fed. R. Civ. P. 6(b)(1)(B); *Campbell v. Baylard, Billington, Dempsey & Jensen, P.C.*, No. 4:17-cv-02390-JAR, 2018 WL 1419893, at *3 (E.D. Mo. Mar. 22, 2018) (granting motions to set aside default and for extension of time to file responsive pleading out of time).

By:    */s/ Marshall S. Ney*
Marshall S. Ney (Ark. Bar No. 91108)
FRIDAY, ELDREDGE & CLARK LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR 72758
Tel: (479) 695-6049
Fax: (501) 244-5389
mney@fridayfirm.com

*Attorneys for Defendant Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10t[th] day of September 2018, I caused to be served the foregoing Opposition to Plaintiffs' Motion for Default Judgment, via ECF filing upon the following individual:

David A. Hodges, Esq.
Counsel for Plaintiffs William F. Doshier and dotStrategy, Co.
Centre Place
212 Center Street, Fifth Floor
Little Rock, AR 72201-2429
david@hodgeslaw.com

                                         */s/ Marshall S. Ney*
                                         Marshall S. Ney

                                         Counsel for Defendant Facebook, Inc.